UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rehan S. Alvi, | No. 2:22-cv-00500-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| James Eads, | |
| Defendant. | |

In this action, Richard Alvi alleges James Eads has refused to return the bitcoin Alvi gave him as security for a loan despite Alvi's attempts to repay that loan.  Eads claims Alvi has no right to the bitcoin because Alvi has not repaid him.  He moves to dismiss for lack of personal jurisdiction and for failure to state a claim.  As explained further below, this court has specific jurisdiction, and Alvi has stated viable claims based on his allegation that Eads has wrongly refused repayment, so the motion is **denied**.

I.     **ALLEGATIONS**

Alvi is a real estate investor.  Compl. ¶¶ 8–9, ECF No. 1.  In September 2019, he offered to borrow money from Eads at a higher interest rate than Eads could obtain elsewhere.  *See id.* ¶ 11.  The next month, they reached an agreement for Alvi to borrow $225,000 from Eads in exchange for an "origination fee" and interest.  *Id.* ¶ 13.  The loan was secured by 30.00 bitcoin.

1

*Id.* ¶ 14. If Alvi did not repay the full balance when it came due a few months later, interest would accrue indefinitely at 8 percent until Eads sought repayment. *See id.*

Eads and Alvi did not speak for the next year. *Id.* ¶ 15. During that time, the value of the bitcoin rose sharply. *Id.* ¶ 16. At one time, it was worth more than $2 million. *Id.* In November 2021, Alvi asked Eads to accept repayment of the loan. *Id.* ¶ 17. At first, Eads claimed not to remember the loan at all. *Id.* ¶ 18. When Alvi pressed him, however, he said he wanted to keep the bitcoin and would consider the loan "forgiven." *Id.* Alvi demanded that Eads return the bitcoin in exchange for full repayment. *Id.* ¶ 19. Eads never responded. *Id.* For the next six weeks, Alvi tried unsuccessfully to contact Eads and to arrange repayment, but Eads avoided him and evaded his attempts to contact him. *See id.* ¶¶ 19, 21–26.

Alvi filed this lawsuit after his efforts to close out the loan failed. *See id.* ¶ 28. He asserts four claims, all under California law: breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and an equitable claim for unjust enrichment. *See id.* ¶¶ 29–50. Eads, who lives in Montana, now moves to dismiss for lack of personal jurisdiction; in the alternative, he moves to dismiss for failure to state a claim. *See generally* Mot., ECF No. 7. The matter is fully briefed and the court submitted it after a combined hearing and scheduling conference on June 17, 2022. *See generally* Opp'n, ECF No. 8; Reply, ECF No. 10; Mins., ECF No. 15. Benjamin Tolman appeared for Alvi, who also was present, and Stuart Gross appeared for Eads.

**II.     PERSONAL JURISDICTION**

No federal statute governs the personal jurisdiction questions in this case, so this court must determine whether California courts could exercise jurisdiction over the claims against Eads. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020). California authorizes its courts to exercise jurisdiction "to the full extent permissible under the U.S. Constitution." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see also* Cal. Civ. Proc. Code § 410.10. As a result, this court's personal jurisdiction turns on the limits of the Fourteenth Amendment's Due Process Clause. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

2

U.S. 915, 923 (2011).  It is Alvi's burden to show the court can exercise jurisdiction without depriving Eads of due process.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The court assumes the complaint's uncontroverted allegations are true and resolves any factual disputes in Alvi's favor.  *Glob. Commodities*, 972 F.3d at 1106.

The "canonical opinion" on due process and personal jurisdiction is the Supreme Court's decision in *International Shoe Co. v. Washington*.  *Goodyear*, 564 U.S. at 923 (citing 326 U.S. 310 (1945)).  In that case, the Court held "that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316) (alterations omitted).  "In giving content to that formulation, the Court has long focused on the nature and extent of 'the defendant's relationship to the forum State.'"  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017)).

Over the years, the Supreme Court has recognized "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction."  *Id.*  Alvi relies primarily on specific jurisdiction.  *See, e.g.*, Compl. ¶ 5.  Courts in the Ninth Circuit use a three-part test to decide "whether a party's minimum contacts meet the due process standard for exercise of specific personal jurisdiction."  *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013)).  First, the plaintiff must show the out-of-state defendant purposefully directed activities to the forum state, "consummate[d] some transaction with the forum" or its residents, or otherwise "purposefully avail[ed]" itself "of the privilege of conducting activities within the forum," thus "invoking the benefits and protections of its laws."  *Glob. Commodities*, 972 F.3d at 1107 (quoting *Schwarzenegger*, 374 F.3d at 802).  Second, the plaintiff must show its claims "arise out of or relate to the defendant's forum-related activities."  *Id.*  Third, if the plaintiff satisfies these first two parts of the test, the defendant may show that exercising personal jurisdiction would be unreasonable.  *Id.*

3

A plaintiff can satisfy the first part of the three-part test by showing the defendant purposefully directed some harmful action toward the forum state. *Glob. Commodities*, 972 F.3d at 1107. The foundation of this theory of personal jurisdiction is *Calder v. Jones*, a case in which the Supreme Court held that "a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (citing 465 U.S. 783 (1984)). When a plaintiff relies on *Calder*, the court considers whether the defendant "committed an intentional act" that was "expressly aimed at the forum state," and as a result, the plaintiff suffered a harm "the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803 (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

Alvi's allegations against Eads meet this standard. According to the complaint, Eads evaded Alvi because he preferred to keep the 30.00 bitcoin rather than accepting full repayment of the loan; Eads knew Alvi lived in California; and Eads knew that if he did not return the bitcoin, Alvi would suffer a loss in California—that is where Alvi lives and operates his investment business. Their agreement also refers to itself as a "California Promissory Note" and cites California law. *See* Eads Decl. Ex. A at 1, ECF No. 7-1. The Ninth Circuit has found jurisdiction adheres in similar circumstances. *See, e.g.*, *Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (finding personal jurisdiction over claims of tortious interference with contractual rights of person who lived in forum state).

Contrary to Eads's arguments in reply, *see* Reply at 3, "purposeful direction" is an appropriate way to test his contacts with California in this case. The Ninth Circuit does not "impose a rigid dividing line" between the legal tests courts use in personal jurisdiction disputes in cases like this one, which includes elements of both tort and contract law. *Glob. Commodities*, 972 F.3d at 1107. "At bottom," the question is the same: "whether defendants have voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King*, 471 U.S. at 474–75). Alvi alleges Eads has purposefully and wrongly attempted to keep

4

valuable property from him contrary to an agreement that refers expressly to California and its laws.  A lawsuit in California would not be "fortuitous" or "random."  Alvi has thus satisfied the first part of the specific jurisdiction test.

Alvi's claims also readily satisfy the second part of that test, i.e., showing his claims "arise out of or relate to the defendant's forum-related activities."  *Glob. Commodities*, 972 F.3d at 1107 (quoting *Schwarzenegger*, 374 F.3d at 802).  Eads's alleged refusal to accept repayment has deprived Alvi of the bitcoin.

For the third part of the test, the court must decide whether exercising personal jurisdiction would be "reasonable."  *See Burger King*, 471 U.S. at 476–78.  Eads must show it would be unreasonable for the court to exercise jurisdiction over the claims against him.  *Glob. Commodities*, 972 F.3d at 1107.  He must make a "compelling" case.  *Burger King*, 471 U.S. at 477.  The Ninth Circuit has listed seven factors that can help to decide whether exercising jurisdiction would be unreasonable:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs;
>
> (2) the burden on the defendant of defending in the forum;
>
> (3) the extent of conflict with the sovereignty of the defendant's state;
>
> (4) the forum state's interest in adjudicating the dispute;
>
> (5) the most efficient judicial resolution of the controversy;
>
> (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and
>
> (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

The first factor is neutral.  Although Eads's actions focused on California for the reasons above, California and its affairs do not play a central role in the dispute.  Eads's actions would probably have been similar if Alvi had lived in a different state.

The second and seventh factors slightly favor Eads.  It would be less burdensome for him to litigate this case in Montana, where he lives, but that burden is small.  As the Ninth Circuit

5

wrote more than ten years ago, "[w]ith the advances in transportation and telecommunications and the increasing interstate practice of law, any burden of litigation in a forum other than one's residence is substantially less than in days past." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (citations, quotation marks, and alterations omitted). That burden is even smaller today. Depositions, hearings, and other meetings or hearings can be conducted remotely; discovery can be sought, delivered, and reviewed electronically from anywhere; and this court's docket is available on the internet.

The third and fourth factors offset one another. Montana may have an interest in shielding its citizens from litigation in California, but California has an interest in ensuring its citizens have an in-state forum to resolve their disputes.

The fifth and sixth factors weigh slightly in favor of litigation in California. The case was filed in California, and the parties have already engaged counsel and litigated in California. California is also a more convenient forum for Alvi than Montana, but not significantly more convenient. Litigation in another district would not impose a significant burden. *See Activision Pub. Inc. v. Activision TV Inc.*, No. 12-8964, 2013 WL 1003546, at *7 (C.D. Cal. Feb. 25, 2013).

In sum, two of the seven factors weigh in Eads's favor, two factors favor Alvi, and the others are essentially neutral. Eads has not made the necessary "compelling case" against personal jurisdiction.

Because the court has specific jurisdiction, the court need not decide whether Eads is also subject to this court's general jurisdiction. The court denies the motion to dismiss for lack of personal jurisdiction.

### III.  FAILURE TO STATE A CLAIM

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."

*Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

Alvi's first claim is for breach of contract. The parties agree this court should apply California contract law. *See* Mot. at 11–12; Opp'n at 15. The elements of a claim for a breach of contract in California are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Eads focuses on the second element: whether Alvi performed his obligations under the contract. Eads argues Alvi had an obligation to repay the loan in full before he has any right to the bitcoin he had used as security. *See* Mot. at 13–14.

The court assumes without deciding that Eads has correctly interpreted the contract as conditioning his obligation to return the bitcoin on full repayment. At this early stage, the court must accept Alvi's allegation that he attempted to fully repay the loan but that Eads evaded him, ignored him, and prevented him from doing so. *See* Compl. ¶¶ 19–27. With the benefit of these allegations, it is plausible to infer that Alvi could prove at trial that his performance was excused. Under California law, "[n]o one can take advantage of his own wrong." Cal. Civ. Code § 3517. "Thus, '[a] party who prevents fulfillment of a condition of his own obligation . . . cannot rely on such condition to defeat his liability." *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 868–69 (1965) (quoting *Bewick v. Mecham*, 26 Cal. 2d 92, 99 (1945)).

Eads argues he is not obligated to "accept" payments, but that argument refutes a claim Alvi does not advance. Alvi does not allege Eads breached his obligation to accept payments; he alleges Eads breached his obligation to return the bitcoin. The authority Eads cites acknowledges this disconnect. *See Eisenberg v. Citibank, N.A.*, No. 13-01814, 2017 WL 2978752, at *6 (C.D. Cal. July 10, 2017) ("[T]he Agreement does not impose a duty upon defendants to accept payments—although their refusal to accept a payment might excuse plaintiff from making the payment."), *aff'd on other grounds*, 787 F. App'x 929 (9th Cir. 2019). The California Supreme Court also has rejected an actual-repayment argument very similar to the one Eads now makes. *See Turner v. Seterus, Inc.*, 27 Cal. App. 5th 516, 532 (2018) ("[The defendant] cannot defeat the wrongful foreclosure cause of action by relying on its representative's wrongful refusal of the offer to pay . . . by arguing that plaintiffs never made an actual payment."). The court denies the motion to dismiss the contract claim.

Eads's arguments for dismissal of Alvi's second and third claims are derivative of his arguments against the contract claim. *See* Mot. at 14 ("Plaintiff's cause of action for a breach of the covenant of good faith and fair dealing fails for the same reason as the breach of contract claim."); *id.* at 15 ("As laid out above, Plaintiff does not allege taking any actions that would entitle him to the return of the collateral."). The court denies the motion to dismiss the second and third claims as well.

Alvi's final claim is for "unjust enrichment." Compl. ¶ 50. "[M]ost California courts agree that there is no cause of action in California for unjust enrichment." *Lopez v. Wash. Mut. Bank, F.A.*, No. 09-1838, 2010 WL 1558938, at *11 (E.D. Cal. Apr. 19, 2010). It is, rather, "a general principle, underlying various legal doctrines and remedies." *Id.* (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793, (2003)). For example, a plaintiff can request an equitable remedy in "quasi-contract" or "quantum meruit" "when an unjust enrichment has occurred." *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004).

Alvi's allegations invoke this equitable theory. *See, e.g.*, Compl. ¶ 50 ("Common law principles and equity dictate that Defendant restore the 30.00 bitcoin to Plaintiff . . . ."). An equitable claim in quasi-contract would fail if Alvi ultimately proves he and Eads had an

enforceable agreement.  *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("[A]n action in quasi-contract . . . does not lie when an enforceable, binding agreement exists defining the rights of the parties.").  The court thus construes Alvi's fourth claim as an alternative claim that would come into force if he and Eads have no binding agreement defining their rights.  He may assert such a claim even though it is inconsistent with his first two claims.  *See* Fed. R. Civ. P. 8(d)(2)–(3) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. . . . A party may state as many separate claims or defenses as it has, regardless of consistency.").

## IV. CONCLUSION

The court **denies** the motion to dismiss (ECF No. 7).  The court **refers** this action to a mandatory settlement conference before the assigned magistrate judge to be completed **within 60 days**.  The parties shall file a further joint status report within fourteen days of completing that conference.

IT IS SO ORDERED.

DATED:  June 21, 2022.

<u>                                                                          </u>
CHIEF UNITED STATES DISTRICT JUDGE